## Case No. 2,421a.

### The CAROLINE CASEY.

### POUNDER v. PROCEEDS OF THE CAROLINE CASEY.

[23 Betts, D. C. MS. 141.]

District Court, S. D. New York.   Nov. 6 and 13, 1858.

#### PRACTICE IN ADMIRALTY—OPENING DEFAULT.

[After the majority of a crew had obtained satisfaction of their claims against a vessel, in admiralty. another seaman libeled the vessel, and obtained a decree by default. On motion to confirm the master's report, the claimants moved to set aside the default, and for leave to answer. on the ground that since the filing of the libel they had discovered that libellant had contracted personally with the master, who was navigating the vessel upon "a lay." *Held,* that the default should be opened, and claimants allowed to be heard upon the merits.]

[In admiralty. Libel by John A. Pounder against the schooner Caroline Casey for wages (E. & I. H. Lewis, claimants).]

Beebe, Dean & Donohue, for claimants.
W. K. Woodman, for libellant.

BETTS, District Judge. The first of the above causes came to hearing upon an order on the libellant to show cause why the default entered therein should not be set aside, and the claimants be allowed to intervene, and answer the libel filed in the cause. The second case comes up on a motion by the libellant to confirm the report made by a

commissioner under an interlocutory order in his favor. The demand of the libellant in the action is for wages earned as cook and steward upon the schooner Caroline Casey on a voyage upon the high seas, between January, 1857, and March, 1858, amounting to the sum of $66.86. The proceedings on his part were carried forward to a default, upon which a reference to a commissioner to ascertain the amount due was had, and a report was rendered finding a balance of $—— due the libellant for those services. Other members of the crew had previously instituted suit against the vessel to recover their wages on the same voyage, had obtained a decree therefor, and satisfaction of their several demands, when, as is now alleged by those interposing as claimants against this demand, it was discovered by them that the master of the vessel had possession of, and navigated her during the voyage upon a "lay," and that the crew, including the libellant, had contracted with him personally for the voyage, knowing that he was bound to pay their wages, and that the vessel and her owners were not responsible for the charge. This fact is strenuously denied by depositions on the part of the libellant, but it is not the habit of the court to dispose of the merits of a case summarily on affidavits alone, when they are in conflict in material allegations; on the contrary, it will, almost as matter of course, in such cases, exact proper issues in pleading between the parties, and the presentation of full proof, with such legal formalities as shall clothe them with the highest solemnity and sanction.

The libellant has chosen to conduct a separate action for the recovery of his wages without availing himself of the opportunity afforded him to unite his claim with that of his shipmates, under prosecutions when his suit was commenced, and the present claimants offer equitable reasons for interposing at this time a defence upon the merits to this claim, thus put forward in a distinct action. It is not charged in the libel that there was any express lien upon the vessel stipulated for by the libellant in his contract in this case. He relies upon the presumption of the maritime law that the debt carried with it the responsibility of the vessel for its satisfaction. The efficiency heretofore accorded that presumption, must perhaps be now deemed to have been greatly diminished, if not in effect abrogated, by the judgment of the supreme court of the United States in the case of Thomas v. Osborn, 19 How. [60 U. S.] 22. The decision was made by a court strongly divided upon the great feature of the case,—the operation and effect of presumptive liens, in respect to ·debts contracted by masters sailing vessels "in lays;" that is, under obligation to the owner, known to the creditor who deals with the master, that the master was to man and furnish the vessel. A doctrine had obtained in some of

the common law courts of the states, arising, it is believed, out of principles of local legislation, that such special management in the disposition of a vessel, relieved her actual owner from liability for debts which under the maritime law would become liens upon the vessel, unless the creditor proved that he was ignorant of such special disposition of the vessel, and gave credit in reliance upon the responsibility of her owner. 5 Pick. 422; 16 Mass. 337; 6 Pick. 335; 7 Greenl. (Me.) 261; 26 Me. 185. These authorities seem to have satisfied the judge of the United States circuit court in the Massachusetts district—Webb v. Pierce [Case No. 17,320]—that the principle pervaded the maritime law also, and his opinion was apparently adopted and approved in the circuit court of the second circuit. Mott v. Ruckman [Id. 9,881]. It is difficult to distinguish the case of a seaman claiming a lien for wages from that of material men, as both privileges spring out of a common necessity and supposed policy, and are enforced upon the strength of a mere presumption, and do not require, for support, any specific hypothecation of the vessel. It is important that the rule be considered, and its application to liability in rem, and, if it be identical in regard to ships and owners, then the claimants should be allowed opportunity to demand the judgment of the court whether the libellant has here a legal cause of action against this schooner. The legal liability of the vessel, in such instances, rests upon the same principle, whether the credit was given the master for necessities furnished in equipping the ship or in manning her. In either case the ship owner will relieve her from liability to the debt, by proof that the credit was given to the master personally, although, in respect to the wages of seamen, courts may be more astute and rigorous in demanding unequivocal evidence that the privilege of security upon the vessel was waived, than in the mere sale of merchandise for her use and service. It is not important, on this motion, to discuss minutely the principles of law which enter into the constitution of the rule. It will be time enough to ascertain what are its dubious, and what its unquestionable, ingredients and applications, when the facts appertaining to this contract are placed distinctly before the court. I think the parties in interest in the vessel are not precluded by any laches on their side from being heard on the merits of the proposed defence. I shall therefore order that the default in favor of the libellant, taken in this cause, be set aside, on payment of costs by the claimants, and their entering their appearance in the cause, according to the due course of the court, and filing forthwith their answer, and accepting notice of trial in the cause, for the ensuing term of December. And it is also further ordered that the motion in the second above entitled cause be suspended until the further order of the court therein.